UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON


IVAN H. LEE, II,

      Plaintiff

v.                                   Civil Action No. 2:08-0289

CITY OF SOUTH CHARLESTON, a
municipal corporation; FRANK
A. MULLENS, JR., in his official
capacity as Mayor of City of
South Charleston; BRAD L. RINEHART,
in his official capacity as the
Chief of Police for the City of
South Charleston; BOBBY YEAGER,
as an individual and in his
official capacity as a Police
Officer for the City of South
Charleston; D.J. PAULEY, as an
individual and in his official
capacity as a Police Officer for
the City of South Charleston;
and JOHN DOE, JOHN NOE, and JOHN
ROE, Police Officers of the City
of South Charleston, whose true
names are unknown,

      Defendants


MEMORANDUM OPINION AND ORDER


      Pending is the defendants' joint motion to dismiss,

filed June 16, 2008.

## I. Background

Plaintiff Ivan Lee is an African-American male who contends that he was the victim of racial profiling in the course of a roadside stop, detention, search, and seizure on May 5, 2006.  (Compl. ¶ 1, 5).

Lee instituted this action in federal court on May 2, 2008.  His complaint alleges six causes of action, which he titles as follows:

| | |
|---|---|
| First | Fourteenth Amendment Violation of Equal Protection |
| Second | Fourth Amendment Violation of Unreasonable Search and Seizure |
| Third | Assault and Battery |
| Fourth | False Arrest and Illegal Detention |
| Fifth | Intentional Outrageous Conduct, and |
| Sixth | Title VI. |

According to the complaint, on May 5, 2006, Lee had been operating a motor vehicle in a lawful manner and with two passengers.[1]  (Id. at ¶ 12).  He parked his vehicle in the parking lot of the 7-Eleven convenience store located at the

_____

[1] The defendants state in their brief that one of Lee's passengers was Sean Price, a white male, and the other was Dominique Pleasant, a black male.  (Mem. Supp. Mot. 2).

corner of Second Avenue and C Street in the City of South

Charleston, and from there, he and his passengers observed South

Charleston police officers stop an individual known by Lee.[2]

(<u>Id.</u> at ¶ 13).  Lee contends that shortly thereafter, while he

was still parked at the 7-Eleven, he was "accosted by the

Defendant Bobby Yeager and the other officers concerning [a]

shooting."  (<u>Id.</u> at ¶ 14).

        After the encounter, Lee contends that he drove away,

fully complying with all laws and rules of the road.  (<u>Id.</u> at ¶

15).  As he drove, however, he was followed by Defendant D.J.

Pauley in a marked police car.  (<u>Id.</u>).  Pauley followed Lee for

approximately two miles and then stopped him.  (<u>Id.</u>).

        Lee gave Pauley his license and registration.  (<u>Id.</u> at

¶ 16).  Pauley requested permission to search the car, and Lee

refused.  (<u>Id.</u>).  Pauley then instructed Lee and his passengers

to exit the vehicle.  (<u>Id.</u> at ¶ 17).  Lee asked why he had been

stopped, and Pauley responded that Lee had committed several

traffic violations, including a failure to use his turn signal.

---

[2] The defendants state in their brief that the individual
being arrested was Nathaniel Moore.  (Mem. Supp. Mot. 2).  They
offer evidence that Moore was arrested and fined for simple
possession of marijuana, a misdemeanor, on that same day, May 5,
2006.  (Municipal Court Docket Number 44559).

(Id.).  Lee contends in the complaint that he had not violated
any traffic laws and that Pauley's statement was false.  (Id.).
It is noted that defendants support their motion to dismiss with
a copy of a warning ticket showing that Lee was issued a warning
on May 5, 2006, for failure to use his turn signals.  (Uniform
Traffic Ticket and Complaint Number 24000).

    Lee alleges that Pauley handcuffed and frisked him.
(Compl. ¶ 18).  Pauley also searched Lee's two passengers.  (Id.
at ¶ 19).  Defendants note in their brief that Pauley found
marijuana, estimated by him as five grams, in a cigarette packet
when he frisked Pleasant.  (Mem. Supp. Mot. 3).  Pauley then
frisk-searched Price and asked him to remove his shoes, wherein
Pauley found marijuana, also estimated by him as five grams.
(Id.).  Pleasant and Price were both cited for and later pled
guilty to misdemeanor possession of marijuana.  (Id.).
Defendants support their motion with copies of municipal court
docket sheets showing that Sean Price and Dominique Pleasant were
both charged and fined for simple possession of marijuana, a
misdemeanor, on May 5, 2006.  (Municipal Court Docket Numbers
44576 and 44573).

    Pauley then returned to Lee and searched him again,
"this time unzipping [Lee's] pants and feeling him over his

4

entire body, including putting his hand inside [Lee's] underwear
and searching his genital area." (Compl. ¶ 19). All of this was
done, Lee alleges, by the side of the road in full view of
passing traffic. (Id.).

Other police officers arrived and circled Lee's vehicle
with a drug dog. (Id.). The dog alerted and the officers
conducted a search of the vehicle, but found no contraband or
illegal materials. (Id.). Lee was uncuffed and permitted to
leave. (Id. at ¶ 20).

## II. Governing Standard

In ruling upon a motion to dismiss, a court may
consider the factual allegations made in the plaintiff's
complaint, any exhibits attached thereto, matters attached to the
motion to dismiss that are authentic and integral to the
complaint, and any matters of public record of which the court
may take judicial notice. Blankenship v. Manchin, 471 F.3d 523,
526 n.1 (4th Cir. 2006) (matters attached to motion to dismiss
that are authentic and integral); Hall v. Virginia, 385 F.3d 421,
424 (4th Cir. 2004) (public records); 5C Charles Alan Wright &
Arthur R. Miller, Federal Practice and Procedure § 1364. If any

matters outside of the pleadings, other than those just noted, are presented with a motion to dismiss and not excluded by the court, the motion must be treated as one for summary judgment under Federal Rule of Civil Procedure 56.  Fed. R. Civ. P. 12(d); see Federal Practice and Procedure § 1366.  Before converting the motion to dismiss to a motion for summary judgment, the court must give the parties a reasonable opportunity to present all materials that are pertinent to the motion.  Fed. R. Civ. P. 12(d).

District courts have discretionary authority under Rule 12(d) to convert a Rule 12(b)(6) motion into a Rule 56 motion. See Bosiger v. U.S. Airways, 510 F.3d 442, 450 (4th Cir. 2007) (citing with approval Federal Practice and Procedure § 1366 (recognizing the district court's discretionary power)).  Under the plain language of Rule 12(d), a court may choose to exclude from its consideration of the motion to dismiss any matters presented outside of the pleadings.  Fed. R. Civ. P. 12(d); Federal Practice and Procedure § 1366 ("As the language of the rule suggests, federal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and to rely on it, thereby converting the motion,

6

or to reject it or simply not consider it.").

In the pending motion to dismiss, the defendants rely upon several matters outside of the pleadings, namely, the three municipal court docket entries earlier noted as evidencing the citations issued to Sean Price, Dominique Pleasant, and Nathaniel Moore on May 5, 2006, for misdemeanor possession of marijuana; the warning ticket issued to Lee on May 5, 2006, for failing to use his turn signal; and a police report summarizing the incident giving rise to Lee's complaint.  Lee, in his response, attached two matters outside of the pleadings, namely, an affidavit in which Lee swears that the contents of paragraphs 11 through 23 of the complaint are based upon his personal knowledge and are true, and a copy of two pages purportedly taken from a South Charleston Police Department Procedural Manual.

The court may consider the three municipal court docket entries and the warning ticket without converting the motion inasmuch as they are matters of public record that are subject to judicial notice.  As to the remaining evidence, the court declines to consider it inasmuch as the parties had not completed discovery at the time the motion was filed.  This evidence would be more properly considered upon the submission of motions for summary judgment after the parties have had an opportunity to

7

fully develop the facts supporting their claims and defenses.
Accordingly, the court takes judicial notice of the three
municipal docket sheets and the warning ticket and excludes from
its consideration all of the other evidence supplied by the
parties in briefing the pending motion to dismiss.  The motion
will be considered as a motion to dismiss under Rule 12(b)(6),
and will not be converted to a motion for summary judgment under
Rule 56.

 Turning now to the applicable standard for a motion to
dismiss, the court notes initially that Federal Rule of Civil
Procedure 8(a)(2) requires that a pleader provide "a short and
plain statement of the claim showing . . . entitle[ment] to
relief."  Fed. R. Civ. P. 8(a)(2).  Rule 12(b)(6) correspondingly
permits a defendant to challenge a complaint when it "fail[s] to
state a claim upon which relief can be granted . . . ."  Fed. R.
Civ. P. 12(b)(6).

 The required "short and plain statement" must provide
"'fair notice of what the . . . claim is and the grounds upon
which it rests.'"  <u>Bell Atlantic Corp. v. Twombly</u>, 127 S. Ct.
1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47
(1957), <u>overruled on</u> <u>other</u> <u>grounds</u>, <u>Twombly</u>, 127 S. Ct. at
1969)); <u>see also Anderson v. Sara Lee Corp.,</u> 508 F.3d 181, 188

8

(4th Cir. 2007). Additionally, the showing of an "entitlement to relief" amounts to "more than labels and conclusions . . . ." Twombly, 127 S. Ct. at 1965. It is now settled that "a formulaic recitation of the elements of a cause of action will not do." Id.; Giarratano v. Johnson, 521 F.3d 298, 304 (4th Cir. 2008).

The complaint need not, however, "make a case" against a defendant or even "forecast evidence sufficient to prove an element" of the claim. Chao v. Rivendell Woods, Inc., 415 F.3d 342, 349 (4th Cir. 2005) (quoting Iodice v. United States, 289 F.3d 270, 281 (4th Cir. 2002)). Instead, the opening pleading need only contain "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level." Twombly, 127 S. Ct. at 1965; Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)(noting the opening pleading "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."). Stated another way, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." Id. at 1974; Giarratano, 521 F.3d at 302. Describing the plausibility requirement, the Supreme Court recently stated in Iqbal, "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

9

unlawfully." Iqbal, 129 S. Ct. at 1949.  In determining whether a plausible claim exists, the court must undertake a context-specific inquiry, drawing on its judicial experience and common sense, "[b]ut where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'"  Id. at 1950.

As noted in Iqbal, the Supreme Court has consistently interpreted the Rule 12(b)(6) standard to require a district court to "'accept as true all of the factual allegations contained in the complaint . . . .'"  Erickson, 127 S. Ct. at 2200 (quoting Twombly, 127 S. Ct. at 1965); see also South Carolina Dept. of Health and Environmental Control v. Commerce and Industry Ins. Co., 372 F.3d 245, 255 (4th Cir. 2004) (quoting Franks v. Ross, 313 F.3d 184, 192 (4th Cir. 2002)).  The court is additionally required to "draw[] all reasonable . . . inferences from those facts in the plaintiff's favor . . . ."  Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999).

III. Equal Protection and § 1983


As grounds for his first cause of action, Lee contends that the defendants engaged in intentional racial discrimination in performing an allegedly unlawful search and seizure and thereby violated his right under the Fourteenth Amendment to equal protection of the laws.  (Compl. ¶¶ 24-26).

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. Amend. XIV, § 1.  The clause does not proscribe states from making any classifications; rather, it "keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike."  Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001) (quoting Nordlinger v. Hahn, 505 U.S. 1, 10 (1992)).  "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination."  Id.  "Once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny."  Id.

11

Lee alleges that he was subject to disparate treatment on the basis of his race.  Classifications on the basis of race are "seldom relevant to the achievement of any legitimate state interest" and, therefore, "are deemed to reflect prejudice and antipathy -- a view that those in the burdened class are not as worthy or deserving as others."  Id. (quoting City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 440 (1985)).  Accordingly, classifications based upon race are subject to strict scrutiny and are sustained only if they are narrowly tailored to serve a compelling state interest.  City of Cleburne, 473 U.S. at 440.

The defendants contend that Lee's equal protection claim should be dismissed because Lee has failed to allege facts that show he was treated disparately.  (Mem. Supp. Mot. 4).  In support of this contention, the defendants assert that Officer Pauley had reasonable suspicion to stop Lee's vehicle and to conduct a search, based upon two grounds: (1) Lee's behavior of drawing attention to himself by watching the drug related stop and arrest of Nathaniel Moore from the 7-Eleven parking lot, and (2) the officer's belief that Lee had committed a moving violation by failing to utilize his turn signal.  (Id. at 4-6).  Defendants further note that one of the three occupants of Lee's

12

vehicle was a white male, and the white male passenger was treated the same as the black male passenger in that both were ticketed for misdemeanor possession of marijuana.  (Id. at 6-7).

The court finds these arguments to be dubious, at best. Merely observing the stop and arrest of another under the circumstances outlined herein did not constitute a basis for reasonable suspicion; and whether Lee had unlawfully failed to utilize his turn signal is in factual dispute.  Moreover, comparing the treatment of the white passenger with that of the black passenger provides no support for the defendants' position that they treat all vehicle occupants the same.  It shows only that they treated the black driver and passenger the same as they treated this particular white passenger, who was found by the officers in the company of two blacks.  If the officers were discriminating against the blacks because of their race, it is likely that they would have discriminated against the white as well because of his companionship with the blacks.  And, so, the comparison is unpersuasive.

Lee, on the other hand, has alleged sufficient facts to give rise to an equal protection claim.  Based upon the facts as alleged in the complaint, Lee is a black male who may have been

13

stopped by officers lacking reasonable suspicion to make a stop.[3]
Furthermore, the search of Lee's body may have exceeded the scope
of the type of search permissible under the circumstances.[4]  Lee
has also contended, upon information and belief, that the South
Charleston Police Department has "a policy and practice of
targeting certain individuals based principally on their
perceived race or ethnicity, stopping and detaining these
individuals for frivolous or nonexistent causes, and then
subjecting them to unlawful detentions and searches." (Compl. ¶
1).  He asserts that the City of South Charleston has a policy of
racial profiling, specifically alleging that the South Charleston
Police Department fails to "adequately train, supervise, control,
and discipline the officers regarding the circumstances which
constitute probable cause for reasonable suspicion for search and
seizure" and "regarding unconstitutional racial profiling
practices." (Id. at 22).  These allegations are sufficient to
state a section 1983 claim for violation of his right to equal
protection of the laws.

---

[3] See infra pp. 17-19.

[4] See infra p. 19.

14

IV. The Fourth Amendment and § 1983


        As grounds for his second cause of action, Lee contends
that the officers stopped, seized, and searched him without
reasonable suspicion that any violation or crime had been
committed or was likely to be committed, and thereby violated his
Fourth Amendment right to be free from unlawful search and
seizure.  (Compl. ¶ 28).  Lee asserts that the nature of the
traffic stop and "roadside strip search" was objectively
unreasonable.  (Id.).

        The Fourth Amendment guarantees "the people" the right
"to be secure in their persons, houses, papers, and effects,
against unreasonable searches and seizures."  U.S. Const. Amend.
IV.  The protections of the Fourth Amendment extend to brief
investigatory stops of persons that fall short of traditional
arrests.  United States v. Arvizu, 534 U.S. 266, 273 (2002)
(citing Terry v. Ohio, 392 U.S. 1, 9 (1968)).  An officer may
stop and briefly detain a person for investigative purposes, even
in the absence of probable cause to arrest, if the officer has a
"reasonable suspicion" that criminal activity is afoot.  Terry,
392 U.S. at 22, 30.  The officer must be able to articulate
something more than an "inchoate and unparticularized suspicion

                            15

or a 'hunch.'"  Id. at 27.

The level of suspicion required for an investigatory stop is less demanding than that required for probable cause, which is defined as "a fair probability that contraband or evidence of a crime will be found." United States v. Sokolow, 490 U.S. 1, 7 (1989).  However, like the concept of probable cause, the concept of "reasonable suspicion" is not "readily, or even usefully, reduced to a neat set of rules." Id.  Rather, the existence of a reasonable suspicion is determined based upon a totality of the circumstances, including the information known to the officer at the time of the stop and any reasonable inferences that could be drawn therefrom. Arvizu, 534 U.S. at 274.  This determination must be based on commonsense judgments and inferences about human behavior.  Illinois v. Wardlow, 528 U.S. 119, 125 (2000).

The Fourth Amendment further requires that an investigatory stop be reasonable in its scope in addition to being reasonable at its inception, that is, the officer's actions must be reasonably related in scope to the circumstances that justified the stop in the first place. Terry, 392 U.S. at 19-20. If an officer is justified in believing that an individual "whose suspicious behavior he is investigating at close range is armed

16

and presently dangerous to the officer or to others . . . the officer [may] take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm." Id. at 24. The officer need not be absolutely certain that the person is armed; rather, the test is whether a reasonably prudent person in the circumstances would be warranted in the belief that his safety or that of others was in danger. Id. at 27.

Unlike a search incident to an arrest, which can involve a relatively extensive exploration of the person because it is justified in part by the necessity to assure the safety of the arresting officer but also on other grounds, a frisk search for weapons, in the absence of probable cause to arrest, must be limited to that which is necessary for the discovery of weapons that could be used to harm the officer or others nearby. Id. at 25. The search must be strictly circumscribed because "[e]ven a limited search of the outer clothing for weapons constitutes a severe, though brief, intrusion upon cherished personal security," and is surely "an annoying, frightening, and perhaps humiliating experience." Id. at 24-25.

The defendants contend that Officer Pauley had reasonable suspicion to stop Lee because Lee failed to use his

17

turn signal.  (Mem. Supp. Mot. 6).  They rely on the warning
ticket as evidence that Lee did in fact fail to signal, giving
Officer Pauley reasonable suspicion.  According to the complaint,
however, Lee drove away from the 7-Eleven "fully complying with
all laws and rules of the road."  (Compl. ¶ 15).  When he was
stopped, he asked Officer Pauley why he had been stopped, and
Officer Pauley told him "he had committed several traffic
violations and that [he] did not use his turn signals, none of
which was true."  (Id. at ¶ 17).  Accepting as true, as the court
must at the motion to dismiss stage, the allegations that Lee was
fully complying with the traffic laws and that Officer Pauley had
falsely told Lee that he had committed several traffic violations
and failed to signal, Officer Pauley did not have reasonable
suspicion to stop Lee for a traffic violation.

       The defendants further contend that Officer Pauley had
reasonable suspicion to stop Lee because Lee had drawn attention
to himself by observing the drug-related stop of Nathaniel Moore.
(Mem. Supp. Mot. 8).  Lee responds, citing Illinois v. Wardlow,
528 U.S. 119, 124 (2000), that his presence in a particular area
is not enough, by itself, to support a finding of reasonable
suspicion. (Response 5-6).  Although it may ultimately turn out
that Lee's behavior of watching the drug-related arrest of an

acquaintance from the 7-Eleven parking lot, coupled with other related behavior that may be revealed through discovery, gave Pauley reasonable suspicion to stop Lee's vehicle, this issue is better reserved for consideration upon a motion for summary judgment after both parties have had an opportunity to participate in discovery.  At the motion to dismiss stage of litigation, the question is simply whether the plaintiff has stated a claim upon which relief can be granted.  The court finds that the plaintiff has done so.

The court further finds that the plaintiff has alleged sufficient facts to state a claim for violation of his Fourth Amendment rights on the ground that each of the two searches of Lee may have exceeded the bounds of reasonableness under the circumstances.  The frisk-search for weapons may not have been warranted by any cause to believe Lee might be armed and dangerous.  As to the second search, apparently for illicit drugs, the plaintiff has alleged that Pauley, without justifiable basis, unzipped Lee's pants and put his hand inside Lee's underwear and "search[ed] his genital area" while Lee was exposed to full public view.  Pauley's alleged behavior, absent other grounds justifying such an extensive search which may be revealed during discovery, would constitute a violation of Lee's Fourth

19

Amendment rights.

## V. Qualified Immunity

Qualified immunity bars section 1983 actions against government officials in their individual capacity.  Brandon v. Holt, 469 U.S. 464, 472-73 (1985).  Because it is an immunity, and not merely a defense, it protects government officials not only from liability, but also from the burdens of trial and preparing for trial, so it must be addressed by the court at the earliest possible stage of the litigation.  Hunter v. Bryant, 502 U.S. 224, 227 (1991); Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).  "[I]t is effectively lost if a case is erroneously permitted to go to trial."  Mitchell, 472 U.S. at 526.

The test for qualified immunity is a two-pronged inquiry.  The court must determine (1) whether a constitutional right has been violated on the facts alleged and (2) whether the right was clearly established at the time such that it would be clear to an objectively reasonable officer that his conduct violated that right.[5]  Saucier v. Katz, 533 U.S. 194, 200-02

---

[5] The Supreme Court has recently clarified that the prongs of the qualified immunity test need not be addressed in a particular order; courts may use discretion in deciding which of

20

(2001).  A right is clearly established if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right."  <u>Id.</u> at 202.  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct is unlawful in the situation he confronted."  <u>Id.</u>  "If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate."  <u>Id.</u>

Based upon the evidence submitted with the motion to dismiss, the defendants conclude that Lee has failed to allege a constitutional violation because, according to the defendants, the officers had reasonable suspicion to effect an investigatory stop.  (Mem. Supp. Mot. 11-12).  Accordingly, their analysis ends with little consideration as to whether the constitutional violation was "clearly established."  (<u>Id.</u> at 12-13).  Lee responds that the officers are not entitled to qualified immunity because "even [without] considering whether the traffic stop was justified under <u>Terry v. Ohio</u>, it is clear that detaining, handcuffing, and strip searching a person in full public view,

the two prongs should be considered first in light of the circumstances of the particular case at hand.  <u>Pearson v. Callahan</u>, -- U.S. --, 129 S. Ct. 808, 818 (2009).

who was told he was stopped for the mere offense of failing to use a turn signal, is a clear violation of his constitutional rights of which any officer would certainly be aware." (Response 12).

With respect to the first ground upon which Lee has stated a claim under the Fourth Amendment, namely, that the stop was made without reasonable suspicion, the court finds that the defendant officers are not entitled to qualified immunity based upon the facts as alleged in the complaint.  It is clearly established that an officer may stop and briefly detain a person for investigative purposes if the officer has at least a "reasonable suspicion" that criminal activity is afoot.  <u>Terry</u>, 392 U.S. at 22, 30.  The officer must be able to articulate something more than an "inchoate and unparticularized suspicion or a 'hunch.'"  <u>Id.</u> at 27.  The officers contend that they had reasonable suspicion to stop Lee because Lee had drawn attention to himself by observing the stop of Nathaniel Moore.  If Lee and his friends simply observed the stop of Moore from the 7-Eleven parking lot, as is alleged in the complaint, then their behavior would have been indistinguishable from the innocent behavior of anyone else loitering in the 7-Eleven parking lot and observing the stop while in a car or on foot, or observing the stop through

22

the store window.  The court, accordingly, is unable to conclude from the facts as alleged by Lee that the defendants are entitled to qualified immunity.

        With respect to the second ground upon which Lee states a claim under the Fourth Amendment, namely, that the scope of the search performed by the officers was unreasonable, qualified immunity does not at this juncture appear to be available to the defendants.  Under Terry v. Ohio and its progeny, it is clearly established that, absent probable cause for an arrest, an officer is entitled to perform a frisk search for weapons if the officer reasonably believes the suspect may be armed and dangerous.  Id. at 24-25.  The second search performed by the officers as alleged in the complaint clearly exceeded the scope of a search for weapons, having all the earmarks of a search for illicit drugs. It would not be necessary for an officer to unzip a suspect's pants and insert his hand into the suspect's underwear and genital area in full public view to determine whether the suspect was carrying a weapon.  Such a determination could be made by patting the suspect's body through his clothing.  Accordingly, the officers are not entitled to qualified immunity based upon the facts as alleged in the complaint.

VI. Municipal Liability

In <u>Monell v. Department of Social Services of the City
of New York</u>, 436 U.S. 658 (1978), the Supreme Court of the United
States held that local governing bodies can be sued under section
1983 for monetary, declaratory, or injunctive relief where the
allegedly unconstitutional action reflects the implementation of
a local policy.  <u>Monell</u>, 436 U.S. at 690.  "[T]he touchstone of
the § 1983 action against a government body is an allegation that
the official policy is responsible for a deprivation of rights
protected by the Constitution," but local governments may also be
sued "for constitutional deprivations visited pursuant to
governmental 'custom' even though such a custom has not received
formal approval through the body's official decisionmaking
channels."  <u>Id.</u> at 690-91.  However, "a municipality cannot be
held liable <u>solely</u> because it employs a tortfeasor – or, in other
words, a municipality cannot be held liable under § 1983 on a
<u>respondeat</u> <u>superior</u> theory."  <u>Id.</u> at 691 (emphasis in original).

To survive a 12(b)(6) motion, "[s]ection 1983
plaintiffs seeking to impose liability on a municipality must . .
. adequately plead . . . the existence of an official policy or
custom that is fairly attributable to the municipality and that

24

proximately caused the deprivation of [the plaintiff's] rights."
Jordan v. Jackson, 15 F.3d 333, 338 (4th Cir. 1994).  "The
substantive requirements for proof of municipal liability are
stringent," but, as the Supreme Court held in Leatherman v.
Tarrant County Narcotics Intelligence & Coordination Unit, 507
U.S. 163 (1993), section 1983 claims are not subject to a
"'heightened pleading standard' paralleling the rigors of proof
demanded on the merits."  Jordan, 15 F.3d at 338 (emphasis
added).  Rather, section 1983 actions are governed by the liberal
system of notice pleading.  Id.

     For example, in Jordan, a section 1983 action arising
from the summary removal of a child from a home by the Department
of Social Services, the Fourth Circuit concluded that the
plaintiffs had adequately pled municipal liability where the
complaint alleged "the existence of several municipal policies or
customs," specifically contending that the county "maintained a
policy of providing inadequate training to their employees both
on how to determine whether a summary removal was proper and on
the statutory procedural requirements following removal."  Id. at
340.  The complaint further stated that the county "encouraged
the removal of any child left alone, regardless of the
circumstances, and trained their employees accordingly."  Id.

Finally, the complaint alleged that the county "condoned and
ratified the improper and overreaching conduct of their social
workers," including the social worker who had removed the
plaintiffs' child.  Id.

Like the complaint described by the Fourth Circuit in
Jordan, which identified specific county policies, Lee's
complaint identifies specific policies under which he believes
the City of South Charleston to be operating.  He alleges that
the South Charleston Police Department "has a policy and practice
of targeting certain individuals based principally on their
perceived race or ethnicity, stopping and detaining these
individuals for frivolous or nonexistent causes, and then
subjecting them to unlawful detentions and searches."  (Compl. ¶
1).  He asserts that South Charleston has failed "to adequately
train, supervise, control, and discipline the officers regarding
the circumstances which constitute probable cause for reasonable
suspicion for search and seizure."  (Id. at ¶ 22).  He further
asserts that South Charleston has failed "to adequately train,
supervise, control, and discipline the officers regarding
unconstitutional racial profiling practices."  (Id.).  He claims
that Defendant Frank A. Mullens, the Mayor of South Charleston,
and Brad L. Rinehart, the South Charleston Chief of Police, have

exhibited deliberate indifference to the unreasonable risk of serious injuries that such policies, practices, and customs pose. (Id. at ¶ 23).  These allegations are sufficient to satisfy the liberal requirements of notice pleading for a claim of municipal liability under section 1983.

### VII. Duplicative Litigation

Inasmuch as the court finds that Lee has stated a claim against the City of South Charleston for having and implementing a policy or practice of racial profiling and for failure to adequately train, supervise, control and discipline its officers, Lee's section 1983 claims against Officers Pauley and Yeager in their official capacities are duplicative and should be dismissed.  See Kentucky v. Graham, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'. . .  As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."); Love-Lane v. Martin, 355 F.3d 766, 783 (4th Cir. 2004) (finding that the district court correctly held that a section 1983 claim against an official in his official

capacity was essentially a claim against the government entity and properly dismissed the claim against the official in his official capacity as duplicative inasmuch as the government entity itself was also a defendant in the same action).

It is true that Lee seeks equitable relief "enjoining Defendants from continuing such race based discrimination" as described in the complaint.  (Compl. at Ad Damnum clause ¶ 6). Such relief may be fashioned by the court against the officers in their individual capacities.

The court further notes that the defendants did not seek dismissal of defendants Frank A. Mullens in his official capacity as the Mayor of South Charleston or of Brad L. Rinehart in his official capacity as the Chief of Police for South Charleston, and so both of these defendants remain in this action in their official capacities, along with the City.  Relief may be fashioned against Mullens, Rinehart and the City to address the plaintiff's request for equitable relief "enjoining the Defendants from continuing such race based discrimination as described [in the complaint], and to put into place safeguards, including maintenance of records for every stop conducted by the City of South Charleston Police Department."  (Compl. at Ad Damnum clause ¶ 5).

28

## VIII. Assault and Battery

As grounds for his third cause of action, Lee contends that "officer Pauley's actions constituted an unlawful touching of the Plaintiff and caused the Plaintiff to be in imminent fear of bodily injury." (Compl. ¶ 31).

An actor is subject to liability to another for assault if "(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) the other is thereby put in such imminent apprehension." W. Va. Fire & Cas. Co. v. Stanley, 216 W. Va. 40, 52, 602 S.E.2d 483, 495 (2004) (quoting Restatement (Second) of Torts § 21). An actor commits a battery under the same circumstances if a harmful or offensive contact with the person of the other directly or indirectly results. Id. at 494 (citing Restatement (Second) of Torts § 13).

The defendants contend that Lee has failed to state a claim for assault or battery on the grounds that the officers were lawfully permitted to frisk Lee for the officers' safety during the traffic stop and, according to the defendants, Lee and his passengers consented to the frisk search. (Mem. Supp. Mot. 18). The defendants fail to address whether the search of Lee's

29

body or any other conduct that occurred during the stop
constituted an assault or battery.

The court finds that Lee has stated a claim for assault
and battery inasmuch as he has alleged that the officers acted
intentionally and caused Lee to be in imminent fear of a harmful
or offensive contact, and an offensive contact occurred.
Although the officers may have a defense for their conduct in
that, as they contend, they were conducting a lawful search of
Lee under the circumstances, such a defense is not apparent on
the face of the complaint.

## IX. False Arrest and Illegal Detention

As grounds for his fourth cause of action, Lee alleges
that he was illegally detained by the officers.  (Compl. ¶ 34).
"[T]he gist of the action for false imprisonment [also called
false arrest] is illegal detention of a person without lawful
process or by an unlawful execution of such process.  Riffe v.
Armstrong, 197 W. Va. 626, 640, 477 S.E.2d 535, 549 (1996).  The
West Virginia Supreme Court of Appeals has held:

>An unlawful arrest constituting false imprisonment may
>be effected without manual seizure or touching of the
>subject of the arrest.  Such words and conduct of a
>known officer as give reasonable ground for belief on

30

the part of the subject, that the officer has present
intention to make the arrest, and submission on the
part of the subject, in good faith and under the belief
that he has been arrested or will be arrested
immediately, are sufficient.

State ex rel. Sovine v. Stone, 149 W. Va. 310, 314, 140 S.E.2d
801, 804 (1965).

        Again, the defendants assert that Lee has failed to
state a claim inasmuch as, in their view, Officer Pauley had
reasonable suspicion to stop Lee's vehicle.  Inasmuch as the
court has already rejected this conclusion for the purposes of
the pending motion to dismiss, the court finds the defendants'
arguments with respect to the false arrest claim unpersuasive.

                    X. Intentional Outrageous Conduct

        As grounds for his fifth cause of action, Lee asserts
that he was subjected to "outrageous conduct intentionally
imposed upon him by the Defendant officers to humiliate and
embarrass him, to wit: a roadside strip search."  (Compl. ¶ 37).
The alleged strip search is described in the complaint as
follows: "[t]he officer then . . . returned to the Plaintiff, who
was searched again, this time unzipping his pants and feeling him
over his entire body, including putting his hand inside the

31

Plaintiff's underwear and searching his genital area, all done by the side of the road in full view of passing traffic." (<u>Id.</u> at ¶ 19). The injuries that Lee allegedly suffered are "shock, embarrassment and severe mental distress." (<u>Id.</u> at ¶ 38).

The tort of outrageous conduct, also called intentional infliction of emotional distress, "permits the recovery of damages for emotional distress arising out of extreme and outrageous conduct intentionally or recklessly caused by the defendant." <u>Harless v. First Nat'l Bank in Fairmont</u>, 169 W. Va. 673, 693, 289 S.E.2d 692, 703 (1982). To succeed on a claim of outrageous conduct, a plaintiff must show:

> One, the wrongdoer's conduct was intentional or reckless. This element is satisfied where the wrongdoer had the specific purpose of inflicting emotional distress or where he intended his specific conduct and knew or should have known that emotional distress would likely result. Two, the conduct was outrageous and intolerable in that it offends against the generally accepted standards of decency and morality. This requirement is aimed at limiting frivolous suits and avoiding litigation in situations where only bad manners and mere hurt feelings are involved. Three, there was a causal connection between the wrongdoer's conduct and the emotional distress. Four, the emotional distress was severe.

<u>Id.</u> at 704.

The defendants argue that Lee has failed to state a claim for intentional infliction of emotional distress because

32

the officers were conducting a lawful frisk-search and search for

drugs.  Lee responds that it was outrageous for him to be "strip

searched" in full view of the public.  The court concludes that

Lee has alleged facts sufficient to state a claim for intentional

infliction of emotional distress inasmuch as he alleges that he

suffered shock, embarrassment and severe mental distress as a

result of having been subjected to a "roadside strip search" "in

full view of passing traffic."  (Compl. ¶ 19, 28).


### XI. Defenses to the Remaining State Claims


A. The City of South Charleston


Under the West Virginia Governmental Tort Claims and

Insurance Reform Act, West Virginia Code § 29-12A-1 et seq.,

"Political subdivisions are liable for injury, death or loss to

persons or property caused by the negligent performance of acts

by their employees while acting within the scope of employment."

W. Va. Code § 29-12A-4(c)(2)(emphasis added).  Political

subdivisions are not liable for "intentional malfeasance" on the

part of their employees.  Mallamo v. Town of Rivesville, 197 W.

Va. 616, 624-25, 477 S.E.2d 525, 533-34 (1996) (holding that,

under W. Va. Code § 29-12A-4(c)(2), the Town of Rivesville could

33

not be held vicariously liable for an alleged conspiracy -- an intentional act -- by its police officers). Inasmuch as all of the remaining state law claims -- assault, battery, and false arrest -- are by definition intentional torts, the City of South Charleston cannot be held liable for them. Accordingly, to the extent that Lee seeks to hold South Charleston liable for assault, battery, or false arrest, his claims against the city are dismissed. The city remains in the action, however, with respect to Lee's section 1983 claims.

B. The Officers

The West Virginia Governmental Tort Claims and Insurance Reform Act further provides that:

> (b) An employee of a political subdivision is immune from liability unless one of the following applies:
>
> (1) His or her acts or omissions were manifestly outside the scope of employment or official responsibilities;
>
> (2) His or her acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; or
>
> (3) Liability is expressly imposed upon the employee by a provision of this code.

W. Va. Code § 29-12A-5(b). The defendants contend that the officers are immune from liability under this section of the Act.

34

Lee responds that the officers are not immune because their conduct falls within the exception for actions taken with malicious purpose, in bad faith, or in a wanton or reckless manner.  Inasmuch as Lee has asserted in the complaint that the officers acted intentionally, "without good faith, and with reckless disregard and/or callous indifference," and further inasmuch as the conduct described by Lee in his complaint, viewed in a light most favorable to Lee, could be viewed as having been done with such a mind set, the officers are not statutorily immune.  (Compl. ¶¶ 3, 26, 29).


XII. Conclusion


In summary, the court concludes that Lee has stated a claim under section 1983 against the City of South Charleston and the officers in their individual capacities for alleged violations of Lee's rights under the Fourth and Fourteenth Amendments.  Lee's claims against Officers Pauley and Yeager in their official capacities are dismissed as duplicative.  Based upon the facts alleged in the complaint, however, it does not appear that the officers have been shown at this stage to be entitled to qualified immunity, though the court notes that the defendants' arguments in light of the evidence supplied with

their motion to dismiss may lead the court to a different conclusion on summary judgment should the evidence be unrebutted.

The court further concludes that Lee has stated claims against the officers for intentional infliction of emotional distress, assault, battery, and false arrest.  All of the state claims alleged against the City of South Charleston are dismissed inasmuch as the City is entitled to statutory immunity.  The state claims remain pending against the officers, inasmuch as they have not been shown to be entitled to statutory immunity under the applicable state statute.

Accordingly, it is ORDERED as follows:

1.   That Lee's section 1983 claims be dismissed as to Officers Pauley and Yeager in their official capacities only and

2.   That Lee's claims of intentional infliction of emotional distress, assault, battery, and false arrest be dismissed as to the City of South Charleston.

The Clerk is directed to forward copies of this written opinion and order to all counsel of record.

DATED:  August 21, 2009

John T. Copenhaver, Jr.
United States District Judge

36